Judge Nicholas
delivered the opinion of the court.
Cooper, in right of his wife, being entitled to a legacy under the will of her father, came to an adjustment with the executor as to the amount due, and took his note therefor payable one day after date. Failing to make the money out of the executor by suit, he brought his action against Fisher and Smith, as the sureties of the executor in his official bond. They then filed their bill with injunction against him, alleging the settlement was made without their privity or assent, and that Cooper gave a receipt to the executor for the note as for the amount of the legacy. On final hearing, the court perpetuated the injunction.
There was some controversy as to the genuineness of the receipt; but we deemed it unnecessary to determine either its. genuineness or its effect. For if genuine, and taken in connexion with the note, it amounted to payment, that matter could avail the sureties at law, and there was no need for resort to the chancellor.
Indeed, this ground was waived in argument, and the only point relied on for sustaining the decree, was that the sureties were discharged by reason of the indulgence extended to the executor, in taking his note payable one day after date.
Such a case as this could never have originated the rule which discharges a surety for indulgence extended to the principal. The amount of indulgence is so small, and the chance of prejudice to the surety so very remote, that it could never have formed the original basis of such a course of decision. It is, nevertheless, a question of some difficulty to determine, whether the rule, as adopted, and the reason and principle of its adoption, do not extend to and embrace this case.
From the mass of adjudication and dicta on this branch of the law, it is exceedingly difficult to extract governing principles, for the test of new cases, *397 which shall at once be reconcileable with each other and with all those dicta and adjudications. 1 he cases, arising at intervals before different judges, each seems to have been anxious to vindicate the intrinsic equity of the principles upon which the surety was relieved. Hence opinion after opinion is crowded with all the reasoning, which had ever before been used for discharging a surety in such like cases, without any careful attention to their immediate application to the case in hand. Even a casual review must satisfy any one, that this is strictly true with regard to the so often repeated argument of the right of the surety or endorser, immediately to pay tl’.e bond or bill and pursue the principal or acceptor ; also, to the argument, that the contract must not be varied. Both arguments are good, and and each conclusive of itself, where it applies. But the foisting them in so often, where they have no application, has thrown the subject into almost inextricable confusion.
We will venture to extract a few principles, which, we trust, will not merely bear the test of strict scrutiny, but will measurably serve, by being kept in mind, to extricate the subject from the thrall of the dicta scattered through the books.
There are three substantive, distinct grounds for relieving the surety, which, though intimately connected, are not necessarily blended together, each constituting, per se, a ground of relief.
1st. The creditor must not vary the original coir-tract with the principal, without tiie assent of tiie surety. For it is no longer the contract by which the surety agreed to be bound, and it is therefore immaterial whether the variation be for his benefit or prejudice.
2nd. He must not disable himself from suing the principal, at any time, when by the terms of the original contract, he would otherwise have had a right to sue. Because he .thereby suspends an essential right of the surety, to pay the debt, and take his recourse against the principal ; or, by resort td chancery, to compel the creditor to sue the princi»
*398 3rd. He may indulge the principal, but he must not do it upon any “settled or binding contract for that purpose.” Because tiie surety is or may be thereby prejudiced.
To vary the original contract, or disable himself from suing, the new contract must be adequate theieto, and based upon sufficient consideration. Unumquodque dissolvitur, eo modo quo colligatur. With this explanation, the first and second rules require no elucidation or vindication.
As to the third rule, the distinction seems to be* between indulgence, proceeding from mere delay or negligence in failing to sue or demand payment, and that which is purposed and based upon an express agreement to indulge. For though mere delay to Sue might be prejudicial to the surety, yet the courts could not relieve him on that account merely-* because the creditor was not bound by the terms of his contract to the exercise of any active diligence against the principal. But indulgence given, upon an express agreement to indulge, without the assent of the surety, was considered as a sort of mala fides towards him, as highly calculated to prejudice his interests by relaxing the exertions of the principal to satisfy the debt, and therefore entitling the surety to relief. Some of the earlier cases seem to have gone upon the ground, that it made no difference whether this agreement to indulge was verbal or written, upon consideration or not. Mr. Chitty, in the first editions of his treatise on bills of exchange, only ventured to suggest it with a perhaps, that a consideration was necessary to such agreement. In his sixth edition, page 296, he has struck out the perhaps, upon the authority of the case of Arundel Bank vs. Goble, decided in the King’s bench in 181T, and now states the law to be that, an express agreement not to sue, but without consideration, and without taking any new security, being nudum pactum, will not discharge the endorsers of a bill. In the cases, of Fulton vs. Mathews, XV John. 433, and McLemore vs. Powell, XII Wheaton, 554, it is decided, that a giving time to the principal or accept- or, upon an express verbal agreement to give time, *399 but without consideration, would not discharge the surety or endorser. The courts had probably become alarmed at the great number of cases where sureties were demanding relief, and in the latter determinations, were no doubt influenced by the danger of suffering solemn contracts “ in writing, to be impaired by careless, idle or misrepresented conversations.” It is probably to be regretted, that a sufficient consideration for the agreement to indulge, to make it obligatory on the principal, had not been required in all cases. But such has not been the course of decision.
In the leading cases of Nisbet vs. Smith, and Rees, vs. Berrington, in England, and that of Norton vs. Roberts, IV Monroe, 492, there is no consideration shewn for the creditor’s agreement to indulge. In Rathbone vs. Warren, X John. 587, where a plaintiff had made a written agreement, without consideration, with a defendant - against whom he had judgment, that he would not issue execution against him for the purpose of fixing the bail, until after a certain day ; the bail not having assented to the arrangement, were held to be discharged. Chitty, page 292, says, “ if the obligee of a bond, with surety, without communication with the surety, take notes from the principal, and give further time, the surety is discharged. The taking of a bond or any security, payable at a future day, from the acceptor of a bill, or maker of a note, without the assent of the other parties thereto, would discharge them from liability.” For which, he cites various adjudged cases. The ground of determination in Arundle Bank vs. Goble, was that there was no fresh security taken, and no consideration paid the holder for the agreement, yet that ageement was in writing. However the law may be, whether consideration be necessary or not, where the agreement is in writing, it seems settled, and the case of Morton vs. Roberts is well supported by authority, that where the indulgence given is accompanied with the reception of a new security, whether of the same or inferior degree, that the surety is discharged, unless he be privy to the engagement. But the bare reception of a new security, without indulgence, upon an agreement ta *400 indulge, will not discharge the surety, any more than an indulgence given upon an agreement to indulge, without consideration or taking a new security.
In this case the contract was not varied, nor did Cooper disable himself from 'suing on the executor’s bond; for there was no contract, express or implied^ on sufficient consideration, to produce either the variation or disability.
Did he, then, indulge the executor, under an agreement to indulge, within the spirit and reason of the •cases ? We think not. We very much doubt, whether the transaction between Cooper and the executor, was either a giving of time, or an agreement to give time, within the meaning of the books. It does not essentially differ from a stated account with an acknowledgment of the balance due, or a duo bill or an acknowledgment of debt due on demand. Suppose, after settling and ascertaining the balance, the executor had said, wait with me an hour, I will procure the money and pay you, or wait until tomorrow and I will then pay, to which the other1 agreed — would a parol arrangement of this sort have absolved the sureties ? We fear we should greatly shock the good sense of the community were we so to declare. There is no substantial difference between the cases supposed and the one under consideration. All the books, and especially the earlier cases, lay much stress upon the injury that does or might ensue to the surety from the indulgence given. That is the undoubted reason for the relief in all this class of cases. Without theaccompanyingidea of pre>judice to the surety, there is no basis of reason, law or justice for his relief. Once place it on the foot qf injury to him, and then there necessarily must hq proof of actual injury sustained, or at least a possible chance of its occuring.
It would he wholly irrational to infer any prejujudice to the sureties from such an arrangement as this. The bond had heen entered into twenty years before, and the legacy was probably some time due. Even were we to infer, from the taking such a note, an agreement to wait until next day, no presumption *401 of'injury to the sureties could arise therefrom. In commercial cities and in commercial affairs, a day may be of importance. The special juries in Westminster Hall, stoutly maintained it for some time, in opposition to the courts, that a check on a banker* must he presented within the hour. Even in our own state, where a day is deemed material as to the time of giving notice of the dishonor of a bill of exchange, a day’s indulgence might be held fatal. But it would be better calculated to promote mischief than to do good, to apply such a rule to all cases arising in an agricultural community like ours, ancl especially to the cases of guardian and ward, executor and legatee.
Owsley-, for plaintiffs ; Crittenden and S. II. Under son, for defendants.
We are fully aware of the impropriety of a variable or fluctuating rule on this or any like subject, where it can be avoided. We are also duly sensible, how greatly it would relieve us from a disagreeable responsibility to curtail our own discretion to say at once, that a moment’s indulgence is as vitiating, as that for a whole year. But this, like most other rules of law, must be expounded according to its spirit and its policy.
The decree must be reversed, with costs, and the cause remanded, with directions to dissolve the injunction and dismiss the bill.